UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDON PEAK, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:20-cv-11496-IT |
| | * |
| TIGERGRAPH, INC., GRAPHSQL, INC., | * |
| d/b/a TIGERGRAPH, TODD BLASCHKA, | * |
| and YU XU, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

April 9, 2021

TALWANI, D.J.

Plaintiff Brendon Peak filed this action against his former employer, TigerGraph, Inc., and GraphSQL, Inc. (together, "TigerGraph"), his manager, Todd Blaschka, and another individual, Yu Xu. On October 8, 2020, Defendants collectively filed a Motion to Transfer Venue [#14]. For the following reasons, the motion is ALLOWED, and the matter will be transferred to the Northern District of California.

I.   **Factual Background**

The following background is taken from the allegations in Peak's Complaint [#1] and the referenced employment agreement and compensation plans.

TigerGraph is an information technology company headquartered in Redwood City, California. Compl. ¶¶ 7, 11 [#1]. On January 9, 2018, TigerGraph hired Peak, who is a resident of Massachusetts, as a regional sales director. Id. at ¶ 15; Employment Agreement ¶ 1 [#14-1]. Peak's employment agreement stated that his position was a full-time position located in Massachusetts, that he would be paid a base salary and "variable compensation" in the form of a

commission based on annual sales targets, and that his employment was "at will." Employment Agreement ¶¶ 1-2, 6 [#14-1]. It also included a forum-selection clause and a choice-of-law provision. Id. at ¶ 8. Peak attempted to negotiate this portion of the employment agreement, but TigerGraph was unwilling to modify the language. Compl. ¶¶ 16–17 [#1]. Peak and TigerGraph executed the agreement without modification. Id. at ¶ 18.

When Peak started at TigerGraph, his commissions were determined by the FY 2018 compensation plan. Compensation Plans 2-6 [#14-2]. In August 2018, Peak began to build a relationship with a potentially lucrative new client. Compl. ¶ 23 [#1]. Peak shared this information with Blaschka in December 2018. Id. at ¶ 40.

Blaschka and Xu then announced a compensation plan for 2019 that dramatically reduced Peak's commissions. Id. ¶¶ at 42-45. In 2019 and 2020, Peak and TigerGraph executed new compensation plans, which superseded the prior ones. Compensation Plans 6, 11, 16 [#14-2].

By spring of 2020, Peak had initiated more than twenty projects with the client, which would have earned him substantial commissions in 2020. Compl. ¶ 79 [#1]. However, on May 14, 2020, TigerGraph informed Peak that he was being laid off due to the financial impact of COVID-19. Id. at ¶ 87. Peak did not receive any commissions for his work with the client. Id. at ¶ 92.

## II.     Procedural Background

On July 6, 2020, after Peak threatened litigation, TigerGraph, Inc., filed a declaratory judgment action in the Superior Court of California, County of San Francisco, seeking a determination that no future commissions were owed to Peak. Compl. for Decl. Relief [#23-4]. Peak removed the case to the United States District Court for the Northern District of California on August 6, 2020, and then filed a motion to dismiss for lack of personal jurisdiction and

improper venue or, in the alternative, to transfer venue to this district, which the district judge denied. N.D.C. Order 1 [#23-5].

On August 8, 2020, Peak filed this action, claiming breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Massachusetts Wage Act against TigerGraph, Inc., and GraphSQL, Inc.; tortious interference with contractual relations against Blaschka and Yu; and civil conspiracy against all Defendants. Compl. ¶ 1 [#1]. Defendants then filed the pending Motion to Transfer Venue [#14], which seeks transfer to the Northern District of California based on the forum-selection clause in Peak's employment agreement.

### III. Standard of Review

A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is the appropriate mechanism by which to enforce a forum-selection clause that points to another federal forum. See Atl. Marine Const. Co. v. United States Dist. Court for W. Dist. of Texas, 571 U.S. 49, 60 (2013). Under § 1404(a), a district court may transfer a civil action to any other district to which all parties have consented or to any other district where the action may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). While a plaintiff's choice of forum is ordinarily entitled to some deference, the calculus fundamentally changes in the presence of a valid forum-selection clause. Atl. Marine, 571 U.S. at 63 ("when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises"). Accordingly, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 51 (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). In addition, "the plaintiff, as the party defying the forum-selection clause, has the

3

burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id.

## IV. Discussion

Defendants move to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a) on the ground that the dispute is governed by the forum-selection clause in the employment agreement. Mot. to Transfer 1 [#14]. Peak acknowledges the forum-selection clause but argues that it does not apply to his claims because the employment agreement and the compensation plans are standalone contracts, and this dispute arises only under the latter, which contain neither forum-selection nor choice-of-law provisions. Pl's Opp. 10 [#23]. He further claims that the compensation plans, by their terms, supersede all other agreements between the parties, including the employment agreement. Id. Defendants counter that the dispute arises out of Peak's employment agreement and that the forum-selection clause therefore covers the dispute. Defs' Mem. 6-8 [#15].

In the alternative, Peak argues that the forum-selection clause is unenforceable because it contravenes Massachusetts public policy and is a contract of adhesion. Pl's Opp. 11 [#23]. He also contends that, because three of the four Defendants were not parties to the employment agreement—or the forum-selection clause contained therein—the claims against these Defendants should not be transferred.[1] See Pl's Opp. [#23].

---

[1] Peak also spends a significant portion of his brief arguing that Defendants should not get the benefit of the "first filed" rule. Pl's Opp. 6-10 [#23]. This rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another district. See CianbroCorp. v. Curran–Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). However, Defendants do not rely on the first filed rule; rather, their motion is brought pursuant to 28 U.S.C. § 1404(a). Mot. to Transfer 2 [#14]. In any event, Peak's reliance on this rule is misplaced: "[i]t is improper for a party to invoke the first filed doctrine in the face of a clearly articulated forum

The court begins with the question of whether the forum-selection clause covers this dispute and then addresses its enforceability and applicability to the claims against GraphSQL, Inc., Blaschka, and Xu.

### A. Applicability of Forum-Selection Clause

Courts interpret forum-selection clauses, like any other contractual provisions, based on their "plain language, attributed purpose, available precedent, and any background policy considerations that may bear."[2] Huffington v. T.C. Grp., LLC, 637 F.3d 18, 21 (1st Cir. 2011).

The employment agreement states:

> This letter agreement and Exhibit A constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings... between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by California law, excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in San Francisco County in connection with any Dispute or any claim related to any Dispute.

Neither party disputes that the employment agreement is a valid contract. In fact, Peak's contract claims—which allege that TigerGraph intentionally and in bad faith deprived Peak of the benefits under the employment agreement—rely on it. Compl. 13 [#1]. The only question,

---

selection clause in a contract." Megadance USA Corp. v. Knipp, 623 F. Supp. 2d 146, 149 (D. Mass. 2009).

[2] The First Circuit has not determined whether forum selection clauses should be treated as substantive or procedural for Erie analysis. See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 16 (1st Cir. 2009). However, the court is not aware of, nor have the parties identified, any material differences in contract interpretation between federal common law and Massachusetts law.

then, is whether the present dispute "arises out of," is "related to," or is "in any way connected with" the employment agreement, Peak's employment with TigerGraph, or any other relationship between Peak and TigerGraph. See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009) ("[I]t is the language of the forum-selection clause itself that determines which claims fall with its scope").

The terms "arising out of," "related to," and "in any way connected with" have different meanings within the context of contract law. "Arising out of" is the narrowest and is generally understood to invoke a causal connection. See Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 7 (1st Cir. 2000) ("['Arising out of'] falls somewhere between proximate and 'but for' causation—an intermediate causation standard"). Phrases like "relating to" and "in connection with" are broader and "mean simply 'connected by reason of an established or discoverable relation.'" Huffington, 637 F.3d at 22 (quoting Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128–29 (2d Cir. 2001) (Sotomayor, J.) (collecting authorities)). But even under the narrowest reading, there is no doubt that Peak's claims are causally connected to his "employment" or "relationship with" TigerGraph. As long as the employment agreement is a valid contract, the forum selection clause covers the present dispute.

Peak argues that the compensation plans supplanted the employment agreement. Each plan covers an approximate one-year period, and states that it "supersedes and replaces all other sales compensation plans and/or programs in which sales personnel participate." 2017-18 Sales Compensation Plan 2, FY 2019 Sales Compensation Plan 7, FY 2020 Sales Compensation Plan 12 [#14-2]. Each includes a "Plan Acknowledgement" paragraph stating: "I understand that all agreements between myself and the Company concerning compensation are included in this

6

Plan, which supersedes all prior plans and agreements." 2017-18 Sales Compensation Plan 6, FY 2019 Sales Compensation Plan 11, FY 2020 Sales Compensation Plan 16 [#14-2].

Unlike the employment agreement, the compensation plans are effective only for about one year and say nothing about any aspect of Peak's employment other than his compensation. Read in context, "all prior plans and agreements" references prior compensation plans and not Peak's employment agreement. And Peak's own complaint, which brings claims for breach of the employment agreement, undermines his argument. The court therefore concludes that the compensation plans do not supersede the employment agreement and that the forum-selection clause applies to this dispute.

### B. Enforceability of Forum-Selection Clause

Forum selection clauses are "prima facie valid," and should not be set aside unless a plaintiff makes a "strong showing" that the clause is "'unreasonable' under the circumstances." Claudio-de Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 48 (1st Cir. 2014) (citations omitted). A finding of unreasonableness can be made if (1) the clause was produced through fraud or overreaching; (2) "enforcement would be unreasonable and unjust"; (3) proceedings in the agreed-upon forum would be "so gravely difficult and inconvenient" as to effectively deprive a plaintiff of his day in court; or (4) "enforcement would contravene a strong public policy of the forum in which suit is brought." Id. at 48–49.

Peak claims that transfer would require imposing California wage laws on a Massachusetts resident and employee, in contravention of the public policy of Massachusetts. Pl's Opp. 11–12 [#23]. He does not, however, offer any support for the proposition that that the Northern District of California would be unable to apply Massachusetts law to the Wage Act claims. To the contrary, this court has previously considered the Northern District of California's

7

ability to apply Massachusetts law under Wage Act Claims, finding "the California court faithfully applied Massachusetts law when considering plaintiffs' classification claims brought under the Massachusetts Wage Act." Capriole v. Uber Techs., Inc., 2020 U.S. Dist. LEXIS 55942, *17 (D. Mass. March 31, 2020) (citing Yucesoy v. Uber Techs., Inc., 109 F.Supp. 3d 1259, 1261-62, 1269-70 (N.D. Cal. 2015)). And his argument is further undermined by Defendants' agreement that Massachusetts law will apply to the wage-hour claim. Def's Letter 1 [#26]. In light of that concession, and in the absence of any indication that Peak will lose the protection of Massachusetts wage laws if the case is transferred, his argument does not support a finding that the forum-selection clause was unreasonable, and thus unenforceable.

Peak also claims that the clause is unenforceable as an adhesion contract. Pl's Opp. 12–13 [#23]. An adhesion contract is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to a weaker party who has no real opportunity to bargain about its terms." Restatement (Second) of Conflict of Laws § 187 cmt. b (1971). Although TigerGraph was apparently unwilling to negotiate the specifics of the forum-selection clause, Peak has not convinced the court that it was an adhesion contract where the employment agreement amounted to "a very attractive offer which included a base salary and a lucrative commission compensation plan." Compl. ¶ 12 [#1]. See Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 389 (1st Cir. 2001) (quoting Lambert v. Kysar, 983 F.2d 1110, 1119-20 (1st. Cir. 1993)). Peak also notes that he was "an experienced sales professional with a history of multi million dollar transactions" at the time he was recruited by TigerGraph. Compl. ¶ 10 [#1]. While TigerGraph may have been the dominant party in presenting the offer of employment, Peak has not shown that he was in a weak position in accepting the offer. The court therefore concludes that the forum-selection clause was not an adhesion contract and is enforceable.

### C. *Transfer of Claims Against Defendants Not Party to Employment Agreement*

Given that the forum-selection clause is enforceable and covers the present dispute, transfer of all claims to the Northern District of California is appropriate. Peak asserts that three of the four Defendants—GraphSQL, Inc., Blaschka, and Xu—were not parties to the employment agreement or the forum selection clause, so the claims against them should not be transferred. The argument as to GraphSQL, Inc., makes little sense, where Peak has alleged in the Complaint [#1] that GraphSQL, Inc., and TigerGraph, Inc., were both doing business as TigerGraph and has brought a breach of contract claim against GraphSQL, Inc., based on the employment agreement. And allowing the claims against the two remaining Defendants for interfering with the employment agreement and for conspiracy to proceed in separate forums would result in significant waste of judicial resources and economy. See Rivera, 575 F.3d at 24 ("We have stated that 'claims involving the same operative facts' as a claim for breach of contract that is subject to a forum selection clause should also be litigated in the forum chosen by the parties"). Accordingly, all the claims in this case are properly transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

### V. Conclusion

Defendants' Motion to Transfer Venue [#14] is ALLOWED, and the matter is transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

IT IS SO ORDERED.

April 9, 2021   /s/ Indira Talwani
United States District Judge