UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRENDON PEAK,

    Plaintiff,

v.

TIGERGRAPH, INC., et al.,

    Defendants.

Case No. 21-cv-02603-PJH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 42

Before the court is defendants' motion to dismiss plaintiff's complaint. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## I. BACKGROUND

Plaintiff Brendon Peak is a sales professional who resides in Hingham, Massachusetts. Compl. ¶ 6. Defendants TigerGraph, Inc., and GraphSQL, Inc., both d/b/a TigerGraph (hereinafter referred to together as "TigerGraph"), are foreign corporations, with their principal place of business in Redwood City, California. Compl. ¶ 7. TigerGraph is an Information Technology company which customized its novel graphing and reporting technology and applications for its clients. Compl. ¶ 11. Defendant Dr. Yu Xu is TigerGraph's Chief Executive Officer, and Defendant Todd Blaschka is TigerGraph's Chief Operating Officer. Compl. ¶¶ 87, 91.

In December 2017, TigerGraph recruited Peak to work as a sales manager for the company, offering a base salary plus commission compensation plan. Compl. ¶¶ 10, 12.

In January 2018, TigerGraph and Peak entered into a written agreement (the "employment agreement") consistent with the parties' verbal agreements made during the recruiting process. Compl. ¶ 18. Relevant terms of the employment agreement include: (1) Peak was hired, full-time, as a Regional Sales Director; (2) his compensation consisted of a base-salary plus "variable compensation" in the form of a commission based upon "attainment of annual sales targets"; (3) his employment was "at will" and could be terminated at any time for any reason, with or without cause; (4) disputes regarding Peak's employment would be governed by California law and California courts have exclusive personal jurisdiction in connection with such disputes. Blaschka Dec. (Dkt. 42-1), ¶ 4, Ex. 1 at pp. 6-8; Compl. ¶¶ 15, 16, 18. The paragraph of the employment agreement regarding disputes reads in significant part:

> The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by California law, excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in San Francisco County in connection with any Dispute or any claim related to any Dispute.

Dkt. 42-1 at 8. The parties additionally executed a Sales Compensation Plan ("compensation plan"). Blaschka Dec. (Dkt. 42-1), Exs. 2, 3, 4.[1] When Peak started at TigerGraph, his commissions were determined by the 2017-18 Sales Compensation Plan. Dkt. 42-1 at 6-8.

In August 2018, Peak began to build a relationship with a potentially lucrative new client. Compl. ¶ 23. Peak shared this information with Blaschka in December 2018. Compl. ¶ 40. Blaschka and Xu then announced a compensation plan for 2019 that dramatically reduced Peak's commissions. Compl. ¶¶ 42-45. In 2019 and 2020, Peak

---

[1] The first compensation plan, dated 2017-18 and attached to the Blaschka Declaration at exhibit 2, appears to serve only as a reference document because it is unsigned. The latter two compensation plans, for the years 2019 and 2020 and at exhibits 3 and 4, respectively, are both electronically signed by Peak.

and TigerGraph executed new compensation plans, which superseded the prior ones. Dkt. 42-1 at 15, 21.  According to the plans, "Commissions are considered 'Earned' when the Company receives payment in full from the customer."  Blaschka Dec., Ex. 2, p. 2 "Commissions"; Ex. 3, p. 2-3, "Commissions"; Ex. 4, p. 3 "Commissions" (Dkt. 42-1 at 12-13, 18-19, 25).

Throughout 2019, TigerGraph and the client made plans for a range of projects worth multiple millions of dollars per year.  Compl. ¶ 61.  By spring of 2020, Peak had set up more than 20 anticipated projects with the client, which would have earned him substantial commissions in 2020.  Compl. ¶ 79.

On May 13, 2020, Mr. Peak received from the client approval for the first of 20 anticipated project Statements of Work ("SOWs") and forwarded the signed SOW to Blaschka for execution.  Compl. ¶ 85.  On May 14, 2020, TigerGraph informed Peak that he was being laid off due to the financial impact of the Covid-19 pandemic.  Compl. ¶ 87.  Peak was the only TigerGraph sales representative who was laid off.  Compl. ¶ 88.  Peak did not receive any commissions for his work with the client.  Compl. ¶ 92.

On July 6, 2020, after Peak threatened litigation, TigerGraph filed a declaratory judgment action in the Superior Court of California, County of San Francisco, seeking a determination that no future commissions were owed to Peak.  Case no. 4:20-cv-5489-PJH Dkt. 1-1.  Peak removed that case to this court on August 6, 2020, and then filed a motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and forum non conveniens, or, in the alternative, to transfer the case to the district court for the District of Massachusetts.  Case no. 4:20-cv-5489-PJH, Dkt. 9.  The court denied that motion on October 21, 2020.  Case no. 4:20-cv-5489-PJH, Dkt. 16.

On August 8, 2020, Peak filed this separate action in the U.S. District Court for the District of Massachusetts.  Compl. ¶ 1.  Defendants then filed a motion to transfer venue, which sought to bring the case to this court based on the forum-selection clause in Peak's employment agreement.  Dkt. 14.  The District Court for the District of Massachusetts, Judge I. Talwani presiding, granted defendants' motion on April 9, 2021.

3

1    Dkt. 28.  Following transfer and a case management conference in 4:20-cv-5489-PJH,
2    the court related the two cases on June 28, 2021.  Dkt. 41.  The instant motion was filed
3    July 22, 2021, and thereafter fully briefed.  Dkt. 42, 43, 45.

**II.   DISCUSSION**

Peak's complaint against TigerGraph alleges the following claims:

- Count I – Breach of Contract/Covenant of Good Faith and Fair Dealing (Peak vs. TigerGraph);
- Count II – Intentional Interference with Contractual Relations (Peak vs. Blaschka);
- Count III – Intentional Interference with Contractual Relations (Peak v. Yu Xu);
- Count IV – Civil Conspiracy (Peak v. all defendants);
- Count V – Violation of the Massachusetts Wage Act in violation of M.G.L. Chapter 149, §§ 148, 150 (Peak v. TigerGraph);
- Count VI – Violation of the Massachusetts Wage Act in violation of M.G.L. Chapter 149, §§ 148, 150 (Peak v. Todd Blaschka); and
- Count VII – Violation of the Massachusetts Wage Act in violation of M.G.L. Chapter 149, §§ 148, 150 (Peak v. Yu Xu).

Defendants now move to dismiss the entirety of Peak's complaint.  Dkt. 42.

**A.   Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

4

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)). Moreover, the court "need not accept as true allegations contradicting documents that are referenced in the complaint." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

**B.  Analysis**

    **1.  Incorporation by Reference**

"Courts regularly decline to consider declarations and exhibits submitted in support

of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) (citing City of Royal Oak Retirement Sys. v. Juniper Networks, Inc., 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012)); see also Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). "The court must, however, consider each exhibit to the declaration in turn to determine whether it is a proper subject of judicial notice or can be taken into account under the incorporation by reference doctrine in deciding [defendant's] motion to dismiss." Gerritsen, 112 F. Supp. 3d at 1021-22.

The incorporation by reference doctrine is judicially created and is normally applicable when a defendant seeks to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018), cert. denied sub nom. Hagan v. Khoja, 139 S. Ct. 2615 (2019) (quoting United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003)). "We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, the incorporation by reference doctrine applies to all of the documents appended to the Blaschka Declaration. The complaint refers to each the (1) the January 9, 2018, letter employment agreement between TigerGraph and Brendon Peak; (2) TigerGraph 2017-2018 Sales Compensation Plan between TigerGraph and Brendon Peak; (3) TigerGraph 2019 Sales Compensation Plan between TigerGraph and Brendon Peak; and (4) TigerGraph 2020 Sales Compensation Plan between TigerGraph and

Brendon Peak.  Dkt. 42-1.  Even though plaintiff does not include these documents along with his complaint, they are properly considered by the court because they serve as the basis for his claims.  The gravamen of the lawsuit is that TigerGraph failed to compensate Peak under the terms of their agreements, so it is appropriate for the court to consider the agreements.  Therefore, the documents appended to the Blaschka Declaration are incorporated by reference.

### 2. Choice of Law

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (quoting Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187 (9th Cir. 2001)).  When an agreement includes a choice of law clause, California courts apply the following two-pronged test to determine its enforceability: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." Williams v. Facebook, Inc., 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018) (quoting Washington Mut. Bank, FA v. Superior Court, 24 Cal.4th 906, 916 (2001)).  If either prong is met, the choice of law clause will be enforced unless "contrary to a fundamental policy" of the alternative state and if the state "has a materially greater interest in the determination of the particular issue." Washington Mut. Bank, 24 Cal.4th at 917.

Here, the employment agreement includes a choice of law provision.  Dkt 42-1 at 8 ("your employment with the Company or any other relationship between you and the Company . . . will be governed by California law").  And further, both prongs of California's choice of law test are met.  California has an obvious substantial relationship to the parties and a reasonable basis to enforce this choice of law given TigerGraph's Redwood City headquarters.  Peak identifies no Massachusetts policy that would be violated by applying California law to this labor contract dispute.  Contrary to Peak's argument in the opposition brief, Judge Talwani's transfer order did not determine that Massachusetts law would apply to the entirety of the dispute.

7

1   And the applicability of California law to at least part of the claims at issue in this
2   case has been no secret. In the related case, this court previously noted,

> The letter agreement between the parties includes a provision that any 'Dispute[ ]' 'will be governed by California law, excluding laws relating to conflicts or choice of law.' Compl., Ex. A. at 11. Because the court has determined that the forum-selection clause applies and this action is a 'Dispute' as used in the letter agreement, it appears that at least some part of this action will involve application of California law."

Related Case (4:20-cv-05489-PJH) Dkt. 16 at 17 (denying Peak's motion to transfer to D.Mass). Therefore, the choice of law provision within the employment agreement, selecting California law, controls for those claims that do not specifically arise from Massachusetts statutes.

### 3. Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. E.D.C. Technologies, Inc. v. Seidel, 216 F.Supp.3d 1012, 1015 (N.D. Cal. 2016). Every contract contains an implied covenant of good faith and fair dealing which guarantees that "neither party will take any action extraneous to the defined relationship between them that would frustrate the other from enjoying benefits under the agreement to which the other is entitled." Kuhn v. Dept. of Gen. Servs., 22 Cal.App.4th 1627, 1638 (1994).

The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract. Carma Developers, Inc. v. Marathon Development California, Inc., 2 Cal.4th 342, 373 (1992). "[A]s a general matter, implied terms should never be read to vary express terms" of a contract. Id. at 374. "Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract." Digerati Holdings, LLC v. Young Money Entm't, LLC, 194 Cal.App.4th 873, 885 (2011).

In Foley, the California Supreme Court determined that only contract remedies, not

8

tort remedies, are available for claims of breach of the implied covenant in the employment context. Foley v. Interactive Data Corp., 47 Cal.3d 654, 699 (1988). Building on the logic of Foley, breach of the implied covenant in the employment context was further developed in Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 318 (2000).  In that case, the plaintiff was laid off when his work unit was eliminated.  The plaintiff sued his former employer for, among other claims, breach of an implied-in-fact contract to be terminated only for good cause and breach of the implied covenant.  The plaintiff claimed that the implied covenant precluded the defendants from "terminating him arbitrarily, as by failing to follow its own policies, or in bad faith." Id. at 326-27.  The California Supreme Court found that the trial court properly dismissed the plaintiff's claim for breach of the implied covenant.  The state's high court first noted that an implied covenant could not impose substantive duties on contracting parties beyond those incorporated into the specific terms of their agreement.  "If an employment is at will, and thus allows either party to terminate *for any or no reason*, the implied covenant cannot decree otherwise." Id. at 327 (emphasis in original).  Thus, the court concluded that "if the employer's termination decisions, however arbitrary, do not breach such a substantive contract provision, they are not precluded by the covenant. . . . [A] breach of the implied covenant cannot logically be based on a claim that the discharge of an at-will employee was made without good cause." Id. (citation and brackets omitted).  In dicta, the court described one scenario that could give rise to a claim for breach of the implied covenant:

> [T]he covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned.

Id. at 353, n.18.

In Pashman v. Aetna Ins. Co., No. C-13-02835 DMR, 2014 WL 3571689 (N.D. Cal. July 18, 2014), Judge Ryu considered Guz in addressing an employee's suit for breach of the implied covenant, with facts similar to those at issue here.  During the time

of his at-will employment with defendant Medicity, the plaintiff worked pursuant to a commission payment contract that specified that a commission was not earned until the company received payment for the deal. Plaintiff delivered a signed contract from a client, but plaintiff was terminated before the client fulfilled payment, a year later. After first determining that there was no breach of contract, the court explained,

> Under the terms of the [commission plans], Plaintiff was not entitled to a commission on a deal that had not resulted in a payment to Medicity while Plaintiff was employed. Thus, Defendants cannot be held liable for breach of the implied covenant of good faith and fair dealing for doing what Defendants were expressly permitted to do by the terms of the [commission plans]: refuse to pay Plaintiff a commission for which Medicity did not receive payment until a year after Plaintiff left Medicity's employment.

Id. at *13.

More recently, the California Court of Appeal considered breach of the implied covenant in the employment context in the case of King v. U.S. Bank, NA, 53 Cal.App.5th 675, 706-08 (2020), as modified on denial of reh'g (Aug. 24, 2020), review denied (Nov. 10, 2020). There, the plaintiff and U.S. Bank agreed to a performance-based bonus plan, and after plaintiff earned the bonus in accordance with the bonus plan, U.S. Bank terminated him before paying the bonus. U.S. Bank, focusing on the at-will nature of plaintiff's employment, emphasized that he was no longer eligible to receive the bonus following his termination. King prevailed at trial on claims alleging (1) slander, (2) libel, (3) wrongful termination in violation of public policy (a tort), and (4) breach of the implied covenant of good faith and fair dealing. The appellate panel devoted significant discussion to the tortious wrongful termination claim, focusing on the pretextual nature of King's termination. The Court of Appeal affirmed the jury's verdict that U.S. Bank breached the implied covenant, finding that "but for U.S. Bank's bad faith act of terminating King *to avoid paying him the bonus*, King would have received it." Id. at 706 (emphasis original). The court distinguished the facts in Guz, noting that the at-will nature of King's employment was not controlling because the challenged breach was not the wrongful termination of an at-will employee. Id. at 707. Rather, the challenged

10

breach was the pretextual termination to avoid payment of an earned bonus, a factual situation that exactly fit the Guz court's dicta describing a breach of the implied covenant. "[T]he [implied] covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." King, 53 Cal.App.5th at 707-08 (quoting Guz, 24 Cal.4th at 353 n.18).

Here, Peak does not establish that any commission was earned at the time he was terminated, so TigerGraph's refusal to pay him does not constitute a breach. This echoes the situation in Pashman, where the failure to establish that a commission was first earned rendered subsequent nonpayment irrelevant. This point is distinguishable from King, where the plaintiff had earned the bonus payment at issue and defendant subsequently deprived him of the contract's actual benefits. The commission here was not earned and there is no breach of contract.

The primary basis for Peak's implied covenant claim is that the implied covenant prohibits TigerGraph from terminating his employment in order to avoid paying him the commissions he was owed. However, TigerGraph could terminate Peak's employment at any time for any reason or no reason at all given the "at-will" nature of his employment expressly identified in the employment agreement. Dkt. 42-1 at 7, ¶ 6. The annual commission plans each include the following clause: "As a reminder, employment is on an at-will basis (except as otherwise provided by law) and may be terminated with or without cause, and with or without notice, at any time." Dkt. 42-1 at 14, 20, 27, "Changes to the Plan." The covenant of good faith may not "be read to prohibit a party from doing that which is expressly permitted by an agreement." Carma Developers, Inc., 2 Cal.4th at 374. Said another way, "a breach of the implied covenant cannot logically be based on a claim that the discharge of an at-will employee was made without good cause." Guz, 24 Cal.4th at 327. Thus, TigerGraph cannot be held liable for breach of contract or breach of the implied covenant for doing what they were expressly permitted to do by the terms

11

of the employment agreement: terminate Peak for any reason.

Plaintiff offers a second theory for this claim—the implied covenant prohibits employers from terminating employees to avoid paying commissions the employee was "on the brink" of earning. But this argument misses the mark. Peak had not yet earned commissions under the commission plans at the time of his termination. The complaint suggests that only one SOW was submitted for signature before his termination, but it was not yet paid. Compl. ¶ 85. The compensation plans signed by the parties state, "Commissions are considered 'Earned' when the Company receives payment in full from the customer." See, e.g., "FY 2020 Sales Compensation Plan," Dkt. 42-1 at 25. Peak does not advance an argument that the client paid TigerGraph based on the signed SOW. Under the terms of the commission plans, Peak was not entitled to a commission on a deal that had not yet resulted in a payment to TigerGraph while Peak was employed. Despite the similarities to the situation described in King, Peak misses the essential element of "earned compensation" that brought the facts of that case within the bounds of the Guz dicta. Guz, 24 Cal.4th at 353, n.18 ("Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as *compensation already earned.*" (emphasis added)). Guz does not suggest that the implied covenant theory can be stretched to cover situations where an employee is terminated and is denied commissions that are prospective and not yet earned. Accord Remus v. Fios, Inc., No. C 11–01264 CRB, 2012 WL 707477 at *9 (N.D. Cal. Mar. 5, 2012) (granting summary judgment against plaintiff on implied covenant claim, where plaintiff salesman argued that defendant's decision to change commission rate for a commission that had not yet been earned frustrated plaintiff's expectation for amount of the prospective commission, because "[t]o read the Compensation Plan as implying that the covenant of good faith and fair dealing prevented Defendant from taking away prospective commissions is in direct conflict with the stated language of the Compensation Plan" (quotation omitted)). Thus, defendants cannot be held liable for

12

breach of the implied covenant of good faith and fair dealing for doing what defendants were expressly permitted to do by the terms of the commission plans: refuse to pay Peak a commission for which TigerGraph did not receive payment.

Peak's third rationale for breach of the implied covenant is that Tigergraph breached by unilaterally changing the terms of the compensation plans after Peak showed the potential to bring in significant deals for the company. However, this argument fails quickly in light of the express terms of the employment agreement and the subsequent commission plans: they show mutual assent with Peak's signature endorsing three out of the four agreements, including the operative most recent. Dkt. 42-1 at pp. 9, 21, 27.

Therefore, for all these reasons, Peak's first claim for "breach of contract/covenant of good faith and fair dealing" is dismissed.

### 4. Interference with contract and civil conspiracy

Under California law, "it is settled that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." Mintz v. Blue Cross of Calif., 172 Cal.App.4th 1594, 1604 (2009). Similarly, a corporation cannot conspire with its own employees to create a conspiracy: "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." Wise v. Southern Pacific Co., 223 Cal.App.2d 50, 72 (1963). There exists no claim for civil conspiracy under California law. See Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-511 (1994) (explaining that there is no independent claim for civil conspiracy, such a claim must rely on an underlying tort). The California Supreme Court concluded that imposing tort liability on a contracting party would "[1] illogically expand[ ] the doctrine of civil conspiracy by imposing tort liability for an alleged wrong—interference with a contract— that the purported tortfeasor is legally incapable of committing; and (2) . . . obliterate[ ] vital and established distinctions between contract and tort theories of liability by

13

effectively allowing the recovery of tort damages for an ordinary breach of contract." Id. at 510. The court noted that "California recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract." Id. at 513 (emphasis original).

Here, following the earlier conclusion that California law applies to claims not specifically arising from Massachusetts labor law, Peak fails to make out a claim for either interference with contract or civil conspiracy. Defendants Xu and Blaschka operated within their roles as officers of TigerGraph throughout the events described in the complaint. Because they were not strangers to the employment agreement or any of the compensation plans, the two individual defendants cannot be liable for interfering with the contracts. Therefore, Peak's second, third, and fourth claims are dismissed.

### 5. Massachusetts Wage Act

Massachusetts Wage Act section 148 expressly states that its protection is limited to a commission that has "been definitely determined and has become due and payable." Pre-order efforts that may produce future orders do not support a claim for payment of commission where payment of commission is specifically based on orders. Gerald Rosen Co. Int'l Tel Telegraph, 16 Mass.App.Ct. 929 (Mass. App. Ct. 1983). In King v. Mannesmann Tally Corp., 847 F.2d 907 (1st Cir. 1988), a plaintiff salesman sought payment of a commission because he had established a vendor relationship with a customer before he was terminated. The plaintiff's commission was not earned until orders were booked and shipped, and because no orders had been booked and shipped, the court there determined that there was no commission due and payable upon which a claim could stand. Id. at 908.

In several cases considering this provision of the Massachusetts Wage Act, employers have been found to both violate the Act and breach the covenant of good faith and fair dealing by terminating an employee for the purpose of avoiding payment of commissions. Fortune v. Nat'l Cash Register Co., 373 Mass. 96, 101-105 (1977). Expanding on the decision in Fortune, the Supreme Judicial Court of Massachusetts

1    determined that a discharged at-will employee can state a claim for breach of the
2    covenant of good faith and fair dealing by showing that the termination was made without
3    good cause, that it resulted in the deprivation of compensation to the employee for past
4    services, and that it resulted in a windfall for the employer. Gram v. Liberty Mut. Ins. Co.,
5    384 Mass. 659, 671-72 (1981).  A claim for such a breach exists even absent evidence of
6    an employer's bad faith or intent to deprive an employee of benefits an employee had
7    earned. Id.
8        Despite the similarities between the Massachusetts cases cited and the facts here,
9    there is one distinguishing fact that defendants have rightly pointed out: Peak did not yet
10   earn the commissions he claims are owed.  In Fortune and Gram, the courts determined
11   that the Massachusetts Wage Act had been violated in significant part because the
12   commissions plaintiffs sought had already been earned under the terms of the
13   commission structures in place before the salespeople were terminated.  But here, the
14   plain language of the employment agreement provides that commissions are not yet
15   earned until payment, and Peak does not plead that TigerGraph was paid based on the
16   sales he completed.  The controlling language from the plans provides that
17   "Commissions are considered 'Earned' when the Company receives payment in full from
18   the customer." See Blaschka Dec., Ex. 4 (Dkt. 42-1 at 25).  Peak describes at length his
19   pre-sale efforts to bring in a multi-million-dollar line of business for TigerGraph, but the
20   commissions on that line of business were not yet "earned" at the time he was
21   terminated.  Therefore, Peak's fifth, sixth, and seventh claims for violations of the
22   Massachusetts Wage Act are dismissed.
23   **III.   CONCLUSION**
24       For the reasons stated above, the court GRANTS defendants' motion to dismiss
25   plaintiff's complaint.  To be clear, the court has found that plaintiff's claims under both
26   California and Massachusetts law require that the commissions at issue have been
27   earned, as that term is defined by the contracts.  Given the clear language of the
28   contracts, the court's choice of law determination, and the facts as currently pleaded, the

court is doubtful that a viable claim can be made.  Nonetheless, the court grants leave to amend no later than 28 days from the date of this order.  No new claims or parties may be added without leave of court or the agreement of all parties.

**IT IS SO ORDERED.**

Dated: September 7, 2021

>*/s/ Phyllis J. Hamilton*
>PHYLLIS J. HAMILTON
>United States District Judge