UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDON PEAK,<br><br>    Plaintiff,<br><br>        v.<br><br>TIGERGRAPH, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-02603-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 51 |

Defendants' motion to dismiss came on for hearing before this court on December 9, 2021. Plaintiff appeared through his counsel, Sol J. Cohen. Defendants appeared through their counsel, Adron W. Beene. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

Plaintiff Brendon Peak is a sales professional who resides in Hingham, Massachusetts. FAC ¶ 5. Defendants TigerGraph, Inc., and GraphSQL, Inc., both d/b/a TigerGraph (hereinafter together to as "TigerGraph"), are foreign corporations, with their principal place of business in Redwood City, California. FAC ¶ 6. TigerGraph is an Information Technology company that customizes its novel graphing and reporting technology and applications for its clients. FAC ¶ 10. Defendant Dr. Yu Xu is TigerGraph's Chief Executive Officer, and defendant Todd Blaschka is TigerGraph's Chief Operating Officer. Dkt. 51-1 ¶ 2.

In December 2017, TigerGraph recruited Mr. Peak to work as a sales manager for

the company, offering a base salary plus commission compensation plan. FAC ¶¶ 9, 11. In early 2018, TigerGraph and Mr. Peak entered into a written compensation agreement ("agreement") consistent with the parties' verbal agreements made during the recruiting process. FAC ¶ 16.

Relevant terms of the agreement include: (1) Peak was hired, full-time, as a Regional Sales Director; (2) his compensation consisted of a base-salary plus "variable compensation" in the form of a commission based upon "attainment of annual sales targets"; (3) his employment was "at will" and could be terminated at any time for any reason, with or without cause; (4) disputes regarding Peak's employment would be governed by California law and California courts have exclusive personal jurisdiction in connection with such disputes. FAC ¶¶ 16, 17.

When Peak started at TigerGraph, his commissions were based on total contract value, with escalators for commissions beginning at 11.5% of total contract value and maximized at 20% of total contract value. FAC ¶ 17. In August 2018, Peak began to build a relationship with a potentially lucrative new client. FAC ¶ 20. In December 2018, Peak informed Blaschka of the client's plans to begin a three-year Statement of Work ("SOW") with TigerGraph worth $3,000,000. FAC ¶ 37.

In 2019 and 2020, Peak and TigerGraph executed new compensation plans, which superseded the prior ones. Dkt. 51-1 at 21, 27. According to all the plans, "Commissions are considered 'Earned' when the Company receives payment in full from the customer." Blaschka Dec., Ex. 2, p. 2 "Commissions"; Ex. 3, p. 2-3, "Commissions"; Ex. 4, p. 3 "Commissions" (Dkt. 51-1 at 12, 18, 25). The 2019 and 2020 compensation plans changed the provisions for quota attainment and capped multi-year commissions, changes that Peak estimates reduced the commissions payable to him by approximately $1 million. FAC ¶¶ 43, 47, 50, 51.

Peak expressed dissatisfaction with the change from the 2018 to the 2019 compensation plan. FAC ¶ 52. Peak was compensated in April 2019 for the first SOW executed with the client under the terms of the 2019 compensation plan. FAC ¶ 55.

Peak complained about this compensation to his direct supervisor, Jay Samonsky, based on his belief that he should have been compensated at the greater rates considered under the 2018 compensation plan.  FAC ¶ 59.

Peak expressed further dissatisfaction when, after delivering four more executed SOWs by December 2019, he was compensated under the 2019 compensation plan because he believed he should have received commissions calculated under the 2018 compensation plan.  FAC ¶¶ 67, 69.  In spring 2020, Peak received from the client a "graph portfolio" document that outlined 20 anticipated projects with TigerGraph along with percentages representing the likelihood that each project would be consummated.  FAC ¶¶ 77, 80, 81.  On May 13, 2020, Peak relayed an executed SOW from the client to Blaschka.  FAC ¶ 88.  Rather than responding to the executed SOW, on May 14, 2020, TigerGraph informed Peak that he was being laid off due to the financial impact of Covid-19.  FAC ¶ 90.  Peak alleges he did not receive pay "for wages or commissions earned and due."  FAC ¶ 95.

Procedural History

On July 6, 2020, after Peak threatened litigation, TigerGraph filed a declaratory judgment action in the Superior Court of California, County of San Francisco, seeking a determination that no future commissions were owed to Peak.  TigerGraph, Inc. v. Peak, Case no. 4:20-cv-5489-PJH (N.D. Cal. filed Aug. 7, 2020).  Peak removed the case to this court on August 6, 2020, and then filed a motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and forum non conveniens, or, in the alternative, motion to transfer the case to the district court for the District of Massachusetts.  TigerGraph, Case no. 4:20-cv-5489-PJH, Dkt. 9.  The court denied that motion on October 21, 2020.  TigerGraph, Case no. 4:20-cv-5489-PJH, Dkt. 16.

On August 8, 2020, Peak filed this lawsuit in the U.S. District Court for the District of Massachusetts, claiming breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Massachusetts Wage Act against TigerGraph, Inc., and GraphSQL, Inc.; tortious interference with contractual relations against Blaschka and Yu;

3

and civil conspiracy against all Defendants. Dkt. 1 ¶ 1. Defendants then filed a motion to transfer venue, which sought to bring the case to this court based on the forum-selection clause in Peak's employment agreement. Dkt. 14. The District Court for the District of Massachusetts, Judge I. Talwani presiding, granted defendants' motion on April 9, 2021. Dkt. 28. Following transfer and a case management conference in 4:20-cv-5489-PJH, this court related the two cases on June 28, 2021. Dkt. 41.

Following briefing, this court granted defendants' motion to dismiss the complaint with leave to amend. Dkt. 46. The court's decision was substantially based on plaintiff's failure to establish that he had earned the commissions he now seeks—the sales underlying such commissions were not complete as they had not been paid by the client and thus, under the terms of all three compensation plans, they had not yet been earned.

Peak's amended complaint abandons the previous contract-based claims and alleges only:

1. Count I – Wrongful termination in violation of the Massachusetts Wage Act, General Law Chapter 149, § 148A (retaliation) (Peak v. TigerGraph);
2. Count II – Wrongful termination in violation of the Massachusetts Wage Act, General Law Chapter 149, § 148A (retaliation) (Peak v. Blaschka & Xu); and
3. Count III – Violation of the Massachusetts Wage Act in violation of General Law Chapter 149, §§ 148, 150, failure to pay wages (Peak v. all defendants).

Defendants now move to dismiss the entirety of Peak's amended complaint. Dkt. 51.

**INCORPORATION BY REFERENCE**

In support of its motion to dismiss, TigerGraph includes a declaration from Blaschka. Dkt. 51-1. The Blaschka declaration includes copies of the following documents as exhibits: (1) the January 9, 2018, letter Employment Agreement between TigerGraph and Brendon Peak ("Employment Agreement"); (2) TigerGraph 2017-2018 Sales Compensation Plan between TigerGraph and Brendon Peak; (3) TigerGraph 2019 Sales Compensation Plan between TigerGraph and Brendon Peak; and (4) TigerGraph

2020 Sales Compensation Plan between TigerGraph and Brendon Peak.  Dkt. 51-1.  The first argument in defendants' motion is that all of these agreements should be considered as part of the test of the complaint because the complaint relies upon their contents.  Plaintiff does not genuinely oppose the consideration of these documents.

**A.    Legal Standard**

"Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) (citing City of Royal Oak Retirement Sys. v. Juniper Networks, Inc., 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012)); see also Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  "The court must, however, consider each exhibit to the declaration in turn to determine whether it is a proper subject of judicial notice or can be taken into account under the incorporation by reference doctrine in deciding [defendant's] motion to dismiss." Gerritsen, 112 F. Supp. 3d at 1021-22.

The incorporation by reference doctrine is judicially created and is normally applicable when a defendant seeks to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) (quoting United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003)).  "We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

**B.     Analysis**

Here, the incorporation by reference doctrine applies to all of the documents appended to the Blaschka Declaration.  The complaint refers to each the (1) the January 9, 2018, letter Employment Agreement between TigerGraph and Brendon Peak ("Employment Agreement"); (2) TigerGraph 2017-2018 Sales Compensation Plan between TigerGraph and Brendon Peak; (3) TigerGraph 2019 Sales Compensation Plan between TigerGraph and Brendon Peak; and (4) TigerGraph 2020 Sales Compensation Plan between TigerGraph and Brendon Peak.  Dkt. 51-1.  Even though plaintiff does not include these documents along with his complaint, they are properly considered by the court because they serve as the basis for his claims.  The gravamen of the lawsuit is that TigerGraph failed to compensate Peak under the terms of their agreements, so it is appropriate for the court to consider the agreements in assessing whether the complaint states a claim.  Therefore, the court considers the documents appended to the Blaschka declaration incorporated by reference.

**DISCUSSION**

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

6

Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)). Moreover, the court "need not accept as true allegations contradicting documents that are referenced in the complaint." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

**B.     Analysis**

    **1.     Retaliatory Termination**

Section 148A of the Massachusetts Wage Act ("Wage Act") provides the following anti-retaliation protection: "No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." Termination is the quintessential example of a penalization or adverse employment action. Mogilevsky v. Wellbridge Club Mgmt.,

Inc., 905 F. Supp. 2d 405, 412 (D. Mass. 2012). To prevail on a retaliation claim, plaintiff must show: (1) he engaged in protected conduct, 2) he was thereafter subjected to an adverse employment action, and 3) a causal connection existed between the protected conduct and the adverse action. Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 531 (1st Cir. 2015) (analogizing retaliation claim under the Wage Act to retaliation under the Federal Labor Standards Act).

In general, "a complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such an 'action.'" Smith v. Winter Place LLC, 447 Mass. 363, 367 (2006). Two recent Massachusetts appellate opinions considering allegations of retaliatory termination are relevant for consideration of whether an employee's complaint about pay constituted protected activity under the retaliation assessment's first prong. The Supreme Judicial Court affirmed a jury determination that a salesperson's complaint to management that she believed she had been shortchanged on a commission payment constituted protected activity. Parker v. EnerNOC, Inc., 484 Mass. 128, 135-36 (2020). In contrast, an intermediate appellate court determined that an employee's "abstract grumblings" about long hours and low pay were insufficient to constitute protected activity—they did not announce a violation of the Wage Act such as misclassification or unpaid overtime with any level of specificity. Tam v. Fed. Mgmt. Co., 99 Mass. App. Ct. 41, 51, review denied, 487 Mass. 1102, (2021).

In addition to showing protected activity, the Wage Act requires the plaintiff to show "but-for" causation to establish retaliation. Travers, 808 F.3d at 531. "On a claim of retaliatory discharge, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." Mole v. Univ. of Mass., 442 Mass. 582, 594 (2004) (cleaned up) (emphasis in original). A lack of temporal proximity may be overcome if the plaintiff draws a connection of intervening conduct demonstrating that an eventual termination was motivated by retaliation. See Chungchi Che v. Massachusetts Bay Transp. Auth.,

8

1  342 F.3d 31, 38 (1st Cir. 2003) (despite passage of eleven months between filing of claim
2  and demotion of plaintiff, "[e]vidence of discriminatory or disparate treatment in the time
3  period between the protected activity and the adverse employment action can be
4  sufficient to show a causal connection").

5        Here, on the first prong, the facts resemble those in Parker v. EnerNOC.  Though
6  the defendants emphasize that the commission structure at issue in that case involved
7  the complication of a multi-year deal, a complication not at issue here, such complication
8  is relevant to the total amount of commission earned, not retaliation.  As in Parker, Peak
9  engaged in protected activity where he complained to his supervisor about the calculation
10 and payment of his commissions.  As pleaded, Peak reasonably believed that he should
11 have received commissions as calculated under the agreement originally executed at the
12 beginning of his tenure with TigerGraph.  His complaint about improper pay was more
13 specific than "abstract grumblings," and such complaint falls within the statutory scope of
14 an employee's protected action.

15       On the third prong, plaintiff argues that causation is demonstrated by the
16 pretextual nature of defendants' justification for terminating Peak, but this argument
17 stretches the rationale of Travers beyond recognition and places the cart before the
18 horse.  Plaintiff's argument more properly fits a few steps down the burden-shifting
19 chain—he must first establish the prima facie claim of retaliation (including the element of
20 causation), then, after defendants name their non-retaliatory rationale for the layoff,
21 plaintiff may argue that the rationale was pretextual.  Mogilevsky v. Wellbridge Club
22 Mgmt., Inc., 905 F. Supp. 2d 405, 411 (D. Mass. 2012) (applying McDonnell Douglas
23 Corp. v. Green, 411 U.S. 792, 802-803 (1973), burden-shifting analysis to analogous
24 FLSA retaliation claim).  Peak alleges that he told his manager in December 2019 about
25 his desire to receive commissions under the older 2018 Agreement.  FAC ¶ 69.  Peak
26 was laid off in May 2020 (FAC ¶ 90), well after such complaints regarding pay and after
27 his March 2020 execution of the new compensation plan acknowledging the 2018 and
28 2019 Plans were superseded (Dkt. 51-1 at 27).  The termination lacks a temporal relation

to the complaints to support an inference of causation, and further, Peak fails to establish any conduct in the intervening months between his commission complaints and his eventual termination that support such an inference.

Peak's good-faith complaints about his commissions constituted protected conduct, and defendants concede that he suffered an adverse employment action in the form of termination from employment, but Peak fails to plead a plausible claim for retaliation where he does not establish a causal connection between the two.  They are simply too attenuated based on the separations of time and Peak's own conduct.  Therefore, Peak's two claims for retaliation are dismissed.  Because plaintiff advanced at the hearing that further amendment of the pleading would remedy this attenuation, the two claims for retaliation are dismissed without prejudice.

### 2. Violation of the Massachusetts Wage Act

The Wage Act requires that commissions are to be paid when two conditions are met: (1) the amount of the commission "has been definitely determined"; and (2) the commission "has become due and payable."  MASS. GEN. LAWS ch. 149, § 148.  Efforts to develop business or curry future sales do not support a Wage Act claim for unpaid commission where the commission is based on paid sales.  King v. Mannesmann Tally Corp., 847 F.2d 907 (1st Cir. 1988); Gerald Rosen Co. v. Int'l Tel. & Tel. Co., 16 Mass. App. Ct. 929 (1983).

Peak seeks to analogize this case to Parker, 484 Mass. 128, where another plaintiff sought to recover unpaid commissions following termination.  However, despite the similarities between the Parker case and the facts here related to the retaliation claim discussed above, there is one glaring distinction between that case and the facts here related to the Wage Act claim: unlike the unpaid commission on a multi-year deal at issue in Parker, Peak did not yet earn the commissions he claims are owed.  The controlling language from the 2018, 2019, and 2020 compensation plans provides that "Commissions are considered 'Earned' when the Company receives payment in full from the customer."  See Blaschka Dec., Ex. 2, p. 2 "Commissions"; Ex. 3, p. 2-3,

"Commissions"; Ex. 4, p. 3 "Commissions" (Dkt. 51-1 at 12, 18, 25).  The FAC describes at length Peak's pre-sale efforts to bring in a multi-million-dollar line of business for TigerGraph, but the commissions on that line of business were not yet "earned" at the time he was terminated.  Peak does not plead that TigerGraph was paid based on the sales he completed, and "defendants were not required to retain [Peak], an at-will employee, indefinitely and on his terms," while they waited for completion of a sale.  Biewald v. Seven Ten Storage Software, Inc., 94 Mass. App. Ct. 376, 383 (2018).  The unpaid commissions that serve as the basis for Peak's claim for violation of the Wage Act had not "become due and payable," and Peak thus cannot plead a plausible violation of the Wage Act.  This claim is thus also dismissed.  Because plaintiff has failed to allege any new factual matter relating to this claim which he has already been given leave to amend, it is clear that further amendment would be futile.  Thus, the dismissal is with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss plaintiff's FAC is GRANTED.  The two claims for retaliation are DISSMISSED with leave to amend, and the claim for violation of the Wage Act is DISMISSED WITH PREJUDICE.  Plaintiff shall have 28 days from the date of this order to file a second amended complaint to cure the deficiencies noted herein.  No new claims or parties may be added without leave of court or the agreement of all parties.  Upon the filing of any amended complaint, plaintiff must also file a redline clearly demarcating its changes from the FAC.

**IT IS SO ORDERED.**

Dated: December 10, 2021

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge